IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HAROLD L. DORTCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:20-CV-293-MHT-CSC |
| | ) (WO) |
| | ) |
| NURSE CRAWFORD, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed on April 30, 2020, by Harold L. Dortch, an indigent state inmate, challenging the medical care he received while housed at Bullock Correctional Facility. (Docs. 1 and 14).[2] Thereafter, Plaintiff filed another amendment to his complaint where he named Dr. Tahir Siddiq as a Defendant. (Doc. 38). He claims that Nurse Crawford and Dr. Siddiq have acted with deliberate indifference to his serious medical needs. (Docs. 14 and 38). Specifically, he claims that when he ran out of his diabetic medicine, Nurse Crawford refused to supply him a single dose. (Doc. 14 at p. 3). He also claims

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] By Order dated June 8, 2020, the Court ordered that the Plaintiff file an amended complaint. He was advised in this Order that this complaint would supercede his original complaint. (Doc. 9). On June 17, 2020, Plaintiff filed an amended complaint. (Doc. 14).

that Dr Siddiq cut off the cast on his arm too soon, delayed treatment for the boils on his buttocks and failed to treat nerve damage to his left foot.  (Doc. 38 at pp. 3-5).  He seeks monetary damages and declaratory and injunctive relief.  (Doc. 14 at p. 4; Doc. 38 at p. 6).  He does not state whether he sues the Defendants in their individual or official capacities.  (Docs. 14, 38).

The Defendants filed special reports. (Docs. 26 and 53). These special reports included relevant evidentiary materials in support of these reports, specifically affidavits and prison documents addressing the claims presented by Dortch.  In these documents, the Defendants deny they acted with deliberate indifference to Dortch's medical needs. *Id.*

After reviewing the special reports and exhibits, the court issued an order on March 22, 2022, requiring Dortch to file a response to the Defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 55).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 55 at pp. 2-

2

3).  Dortch filed responses to this order.  (Docs. 56, 58, 62).  Pursuant to the directives of the order entered on March 22, 2022, the court now treats the Defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

To survive the properly supported motion for summary judgment submitted by Defendants, Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (Citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.")

Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Dortch has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

### III.  FACTS

Plaintiff, who is a diabetic, claims that on April 1st, 2020, he ran out of his "keep on person" (KOP) medication because the mail was late.  When he arrived at pill call and asked Nurse Crawford for a single dose, she denied him.  (Doc. 14 at p. 3).  However, he admits that "immediately" following this denial, Officer Rogers called Sgt. Rivers and they made Nurse Crawford give Plaintiff the medication.  *Id.*  Defendant Nurse Crawford denies these allegations and states as follows:

> My name is Betty Jean Crawford, LPN. I am over the age of nineteen (19) years, and I have personal knowledge as to all matters stated herein.
>
> I am a Licensed Practical Nurse (LPN) licensed to practice nursing in the State of Alabama.                . . . .
>
> I am aware that Mr. Dortch alleges that on April 1, 2020, that I improperly refused to provide him with prescribed medications.
>
> As an LPN, I act as a pill call nurse for Wexford at the Bullock County Correctional Facility.
>
> On April, 2020, at approximately 1830 hours, Mr. Dortch came to pill call for his medications.
>
> Mr. Dortch requested that I give him his medications KOP (keep on person) because Dortch slept through the KOP pill call that day.
>
> Mr. Dortch, when he came to pill call on April 1, 2020, at 1830 hours, did not have his empty medication card and I did not feel comfortable giving Dortch his KOP prescribed medication.                . . . .
>
> Mr. Dortch, not having his empty medication card, restricted me from providing Mr. Dortch his prescribed medications pursuant to the patient and provider contract attached hereto.

>       As a pill call nurse, pursuant to the language contained in the patient and provider contract, I am not obligated to provide inmates such as Dortch their KOP medications if they do not bring their empty medication cards to pill call.
>
>       Without the empty medication cards, nurses, such as myself, have no way of knowing what the inmate has on person or what he has already taken for that day.
>
>       Mr. Dortch came to pill call without his empty medication cards, and therefore, I could not provide Mr. Dortch with his requested KOP medications. If I had provided Mr. Dortch with his KOP medications, I would have done so in violation of the patient and provider contract.
>
>       At all times I was acting within the policy and procedures of Wexford and the Alabama Department of Corrections with regard to the medications and prescriptions of Mr. Dortch on April 1, 2020.
>
>       I at all times acted within the standard of care of an LPN practicing as a nurse in the state of Alabama.

(Doc. 26-1 at pp. 1-4). Indeed, in the contract concerning KOP medications signed by Mr. Dortch on April 8, 2019, he attested that he would keep in his "possession the medication package and prescribed container . . . bring the packaging container to the health unit when I am down to seven days of medication . . . I understand if I wait until all my medication is gone that I may run out of my medication before another order arrives." (Doc. 26-1 at p. 6).

Plaintiff also claims that Dr. Tahir Saddiq treated him with deliberate indifference when he failed to treat the nerve damage in his foot, removed the cast from his arm only a week after a specialist at Jackson had put it on, and refused to treat the boils on his buttocks from June 16, 2020, until September 19, 2020. (Doc. 38 at p. 3). Defendant Dr. Siddiq denies these allegations and states as follows:

I am in receipt of and I have reviewed the legal Complaint filed by Alabama state inmate Harold L. Dortch (AIS#298361) [Doc. #38]. Mr. Dortch alleges that he did not receive adequate and/or appropriate medical care during what appears to be July through August 2020. Mr. Dortch alleges that he had boils on his buttocks that went untreated and an arm injury that went untreated.

I have attached hereto the relevant records from Mr. Dortch's medical chart during the subject time.

The medical records show that I saw and assessed Mr. Dortch for the boils on his buttocks on June 16, 2020, and then again on July 17, 2020. On July 17, 2020, I made a recommendation for Mr. Dortch to be seen by a general surgeon for an evaluation for a pilonidal abscess.

However, on August 1, 2020, prior to Mr. Dortch being sent out to see an outside specialist, Mr. Dortch was seen in the health care unit subsequent to an altercation. Mr. Dortch had large wounds in his forearm, chest and right hand. Therefore, Mr. Dortch was transported to Jackson Hospital in Montgomery, Alabama for emergency medical care.

Mr. Dortch remained at the Jackson Hospital in Montgomery, Alabama from August 2, 2020, to August 13, 2020. The medical records from Jackson Hospital state in part as follows:

> Hospital Course: The patient is a 49 year old male who was transferred from local correctional facility status post multiple stab wounds to the left forearm, right hand and right chest. Patient had a pressure dressing to the right chest occlusive dressing to the left arm was undressed and uncontrolled bleeding was noted, pressure was reapplied the patient was clammy and sweating. It was determined that the patient did have an arterial bleeder in the left forearm. Vascular surgery Dr. Sellers was consulted and the patient was emergently taken to surgery. Status post surgery, the patient was placed on ventilator support. The patient is on vasopressor support as well. It was noted the patient had significant amount of subcutaneous emphysema, repeat chest film was performed which showed a large right-sided pneumothorax. Chest tube was placed by ER physician. Laboratory studies as below have been reviewed. Patient then underwent emergent vascular repair and ligation of left radial artery by Dr. Sellers and was kept on vent support for the next few days. His chest tube was subsequently removed and he was transferred to floor. He still has significant left and weakness with wrist drop. Dr. Tuki was consulted and patient underwent above procedure with good results. He is clinically stable

7

now can be discharged by to correctional facility. He still has mild leukocytosis but should respond to p.o. antibiotics. His culture has been negative throughout. He will need to follow with Dr. Tuki in seven days.

When Mr. Dortch left Jackson Hospital, he was transported to the Kilby Correctional Facility located in Mt. Meigs, Alabama. Mr. Dortch arrived at the Kilby Correctional Facility on August 13, 2020. The medical director at the Kilby Correctional Facility is and was Wilcotte Rahming, M.D.

It would appear from the medical records that Mr. Dortch was released from the infirmary at Kilby back to the Alabama Department of Corrections on August 14, 2020.

Mr. Dortch had a follow up appointment with Dr. Tuki on August 14, 2020. Mr. Dortch returned to the Bullock Correctional Facility on August 19, 2020. The admitting nurse took a statement from Mr. Dortch and Mr. Dortch stated – I'm good - no complaints.

The medical records reveal that I made an appointment for Mr. Dortch to have a follow-up appointment with Dr. Tuki and Mr. Dortch was in fact seen by Dr. Tuki for another follow up visit on August 28, 2020. The return from office notes reveal that Mr. Dortch was moving all extremities without any serious medical needs. The medical records from August 28, 2020, further reveal that Mr. Dortch had a bandage change profile for his buttocks.

The medical records further reveal that I made a recommendation that Mr. Dortch was to follow up with Dr. Tuki for the left arm pain. The notes indicate that as of August 28, 2020, Mr. Dortch still had a cast on his left arm.

The medical records reveal that Mr. Dortch was seen in the health care unit on September 1, 2020, and seen and assessed by the registered nurse for sharp pain in his left foot, as well as buttock pain.

The next day, September 2, 2020, Mr. Dortch was seen in the health care unit complaining of chest pain.

Thereafter, Mr. Dortch was seen in the Chronic Care Clinic on September 4, 2020, and medications were renewed for his foot pain.

Mr. Dortch was again seen in the health care unit on September 8, 2020, complaining of chest pain since August 1, 2020, subsequent to the previous altercation.

Mr. Dortch was also seen in the health care unit on September 8, 2020, complaining of pain from a boil on his buttocks. The medical records reveal that Mr. Dortch was educated about pain from the boil, and verbalized understanding with regard to his treatment and prescribed medications. The medical records reveal that I personally saw and assessed Mr. Dortch on September 9, 2020, and then again thereafter on September 11, 2020. Mr. Dortch was seen in the health care unit on September 15, 2020, with regard to the boils on his buttocks. Mr. Dortch informed the nurse that the boils on his buttocks had been present for approximately three months.

Mr. Dortch was thereafter seen in the health care unit on September 16, 2020. The nurses' notes from the date state as follows:

> Inmate Harold Dortch was brought from RHU for his diabetic shot. Inmate wanted to get Advil he said he didn't get on evening shift, inmate was told by Nurse Geno that he was not on Advil. He got very, very hostile and rude and started cussing and got demanding. Stated he was going to get some paid medication for his arm, because it was hurting. Inmate was so rude and hostile that it was frightening, he was cursing Dr. Siddiq and calling him very rude names. *Inmate started talking about how he was going to sue Nurse Crawford, inmate* was asked by this writer if he would not talk about Nurse Crawford and if he would please stop cussing at the HCU. Inmate went out of the door loud and still cussing.

The medical records reveal that Mr. Dortch was thereafter seen again in the health care unit for left foot pain on September 17, 2020. On September 2020, 2020, Mr. Dortch was sent out to the free world physician for a follow up with regard to hospital stay at Jackson Hospital in August 2020. The return from office form notes-no distress noted.

Mr. Dortch was again seen in the health care unit for boils on his buttocks on September 29, 2020. I personally saw and assessed Mr. Dortch on September 29, 2020, and set forth that Mr. Dortch was currently on the antibiotic Bactrim for the boils.

There is nothing in Mr. Dortch's medical chart to reveal that Mr. Dortch's necessary medical care was at any times delayed and/or denied.

Mr. Dortch was seen by myself, nurses, and outside specialists for his necessary medical needs from July 2020, through September 2020. Mr. Dortch had serious medical issues due to his altercation and was immediately sent to be seen by outside specialists for his necessary medical needs.

I am personally aware of the medical treatment that Mr. Dortch received from July 2020 through September 2020, and it is my opinion that Mr. Dortch at all times received necessary medical care within the standard of care of physicians practicing medicine in the state of Alabama.

(Doc. 53-1 at pp. 2-6).

## IV.  DISCUSSION

### A.  ABSOLUTE IMMUNITY

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

10

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)). In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed. The Court will now turn its attention to Plaintiff's deliberate indifference claims against Defendants in their individual capacities for both monetary damages and injunctive relief.

## B. DELIBERATE INDIFFERENCE

> **1. Standard of Review.** That medical malpractice—negligence by a physician—is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*,

12

182 F.3d 1248,1255 (11th Cir. 1999) (holding that, for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330–33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of deliberate indifference . . . which is in turn defined as requiring two separate things[:] awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and . . . draw[ing] of the inference[.]" *Taylor*, 221 F.3d at 1258 (internal quotation marks and citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v.*

13

*Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545 (citation and internal quotation marks).  To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, 221 F.3d at 1258 (citation and internal quotation marks omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (holding that prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient); *Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of plaintiff's request to see an outside specialist . . . did not amount to deliberate indifference."); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not

15

enough to establish defendant's deliberate indifference" as the allegation does "not show that defendant knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm.").

### 2. Medical Treatment

Plaintiff alleges that Defendants Nurse Crawford and Dr. Siddiq treated him with deliberate indifference.  Specifically, he claims that when he ran out of his diabetic medicine, Nurse Crawford refused to supply him a single dose.  (Doc. 14 at p. 3).  He also claims that Dr. Siddiq cut off the cast on his arm too soon, delayed treatment for the boils on his buttocks and failed to treat nerve damage to his left foot.  (Doc. 38 at pp. 3-5).  The Plaintiff admits that though Nurse Crawford denied his request for a single dose of his diabetic medication, other correctional officers interceded and he "immediately" received his medication. (Doc. 14 at p. 3).

After a careful review of all the evidence, the court concludes that Dortch fails to demonstrate deliberate indifference on the part of Defendants. Concerning the claims against Nurse Crawford, Plaintiff first fails to demonstrate that a single missed dosed of his diabetic medicine constituted a risk of serious injury to him.  More importantly, there is no dispute that Plaintiff was given the dose of medicine "immediately" after the denial because of his complaint to another correctional officer.  *Id.*  Thus, the court concludes that Plaintiff fails to demonstrate that Nurse Crawford's alleged deliberate indifference caused him any injury.  *Mann,* 588 F. 3d at 1306-07.

Concerning the claims against Dr. Siddiq, the court's independent review of the medical records confirms that Plaintiff's boils were treated on numerous occasions by Dr. Siddiq and free-world doctors; his claims of left foot pain were assessed and treated multiple times by prison healthcare personnel and the cast on his arm was still in place on August 28, 2020, upon his referral by Dr. Siddiq to a free world doctor for follow-up. (Doc. 53-1 at pp. 2-6). Although the medical records confirm Plaintiff received treatment for these complaints, Plaintiff claims that the treatment was delayed or ineffective.

In determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). The court concludes that Plaintiff's claims premised on delay of treatment also fail because there is no medical evidence in the record which demonstrates that the alleged delay caused any detrimental effect to Plaintiff. *Surber,* 206 F. App'x at 933. Furthermore, to the extent the Plaintiff alleges that he was due a different mode of medical treatment other than what he received, this does not amount to deliberate indifference. *Hamm,* 774 F.2d at 1575.

17

Accordingly, the court concludes that summary judgment is due to be granted in favor of the Defendants.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motions for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **April 14, 2023** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 31st day of March 2023.

                    /s/   Charles S. Coody
                UNITED STATES MAGISTRATE JUDGE